IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RODNEY MESQUIAS, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | SA-20-CV-00211-FB |
| ACADIA INSURANCE COMPANY, UNION STANDARD INSURANCE GROUP, LLC DOING BUSINESS AS ACADIA INSURANCE COMPANY; | § § § § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment [#27]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#31]. In issuing this recommendation, the undersigned has also considered Plaintiff's response [#30], and Defendant's reply [#33]. For the reasons set forth below, it is recommended that Defendant's motion be **DENIED**.

**I.  Jurisdiction**

Plaintiff's suit alleges breach of contract under Texas law. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

1

## II. Background

This lawsuit concerns hail damage to property located at 2900 Mossrock, San Antonio, Texas 78230 ("the Property"). Plaintiff Rodney Mesquias originally filed this action in the 224th Judicial District Court of Bexar County, Texas, against Defendant Union Standard Insurance Group, LLC, doing business as Acadia Insurance Company ("Acadia"), after Acadia denied his insurance claim. (Orig. Pet. [#1-3], at 5.) Acadia removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal [#1].) After removal, Mesquias filed his First Amended Complaint, which remains the live pleading. (Am. Compl. [#5].) The Complaint asserts a breach of contract claim against Acadia and seeks declaratory judgment declaring that the loss to the property is covered under the policy issued by Acadia.

Acadia has moved for summary judgment on both of Mesquias's claims, arguing that Mesquias suffered no pecuniary loss. Acadia has also moved for summary judgment on the declaratory judgment claim, asserting that it is duplicative of the contract claim. For the reasons that follow, the undersigned recommends that Acadia's motion be DENIED.

## III. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV.  Summary Judgment Record

**A.    Facts Established by the Admissible Summary Judgment Evidence**

Unless otherwise noted, the following represents the undisputed facts contained in the summary-judgment record.

Mesquias initially purchased the Property in July 2015 for $3,100,000.00. (Mesquias Dep. [#28-10], at 38.) Acadia insured the Property under Policy No. CNA 4699258-10. (Policy [#28-1], at 15, 21.) In April 2016, during the coverage period, a hailstorm damaged the roof of the Property. (Amato Email [#28-5], at 1.) The parties dispute when Mesquias initially reported the damage to Acadia, but the summary judgment record establishes that Mesquias filed the insurance claim that gave rise to this litigation in November 2018. (Prop. Loss Notice [#29-1], at 1.) The month prior to filing the claim, in October, Mesquias sold the Property for $2,200,000.00—considerably less than he paid for the Property. (HUD Statement [#29-3].)

Upon receipt of the November 2018 claim, Acadia conducted an inspection and obtained an estimate for replacement of the Property's roof. (Amato Decl. [#28-4], at 3.) Acadia then issued a check to Mesquias for the damage to the Property. (*Id.* [#28-4], at 4.) After learning that Mesquias no longer owned the Property, Acadia reinvestigated the claim. (*Id.*) As part of that reinvestigation, Mesquias gave a statement to Acadia. In that statement, Mesquias stated that he did not reduce the purchase price of the property for the hail damage. (Mesquias Statement [#28-9], at 7.) Mesquias also provided Acadia a copy of the October 2018 property appraisal that was prepared in connection with the sale of the property. (Amato Decl. [#28-4], at 4.) The appraisal, which took place after the hailstorm, indicates that the "contract price is considered below market due to the seller's motivation as the subject is distressed due to legal proceedings stemming from Medicaid issues," but does not specifically mention hail damage to the roof. (Appraisal [#28-12], at 39.) In his deposition, Mesquias affirmed the information given in his earlier statement—that the purchase price of the Property did not expressly account for the hail damage—but also asserted that damage to the Property, including the roof, was a factor in determining the final sales price. (Mesquias Dep. [#28-10], at 22, 27, 29.) The

4

assertion that the existing property damage was a factor in determining the sales price is the disputed fact at the heart of this litigation.

**B.     Mesquias's Objections to Defendant's Summary Judgment Evidence**

Mesquias challenges three pieces of evidence proffered by Acadia as inadmissible. First, Acadia's summary judgment evidence includes an unsworn declaration made by insurance adjuster Jim Amato regarding the handling of Mesquias's claim that is the subject of this litigation. (Amato Decl. [#28-4].) The declaration also purports to validate several other pieces of summary judgment evidence as business records of Acadia. (*Id.* at 2.) Mesquias objects to this statement as inadmissible hearsay. In federal courts, both affidavits and declarations are admissible summary judgment evidence. Fed. R. Civ. P. 56(c)(4). Declarations may be unsworn so long as they include a statement that the declaration was made under penalty of perjury. 28 U.S.C. § 1746. Mr. Amato's statement contains the required language and is therefore admissible summary judgment evidence. (Amato Decl. [#28-4], at 4.) This objection is overruled.

Second, Acadia's summary judgment evidence includes an affidavit by Jordan M. Blake recounting the reasons Mesquias might have priced the Property below market. (Blake Aff. [#28-11], at 2.) Mesquias objects to the portion of the affidavit summarizing statements by Sal Belmares, Mesquias's real estate agent for the sale of the Property, as inadmissible hearsay. The standard for summary judgment evidence is whether the evidence can be reduced to admissible evidence at trial. Fed. R. Evid. 56(c)(2). Acadia argues that Mr. Blake's affidavit meets that standard, arguing that Mr. Belmares made the statements in his capacity as Mesquias's agent. Statements made by an agent or employee of an opposing party in a litigation are by definition not hearsay if the statement was made in the scope of the agency relationship. Fed. R. Evid.

801(d)(2)(D). Mesquias does not dispute that Belmares was his agent when the statement was made, and his own summary judgment evidence supports this agency relationship. (Contract [#30] at 18.) The statement included within the affidavit is therefore not hearsay and is admissible summary judgment evidence. The objection is overruled.

Third, Acadia's summary judgment evidence includes an appraisal of the Property that was obtained when Mesquias sold it. (Appraisal [#28-12].) Mesquias objects to the portion of the appraisal that recounts Mr. Belmares's statement concerning why the Property was priced below market. (*Id.* at 39.) For the same reasons that this statement is admissible in Mr. Blakes affidavit it is admissible in the appraisal. This objection is overruled as well.

C.  **Acadia's Objections to Plaintiff's Summary Judgment Evidence**

Acadia challenges one piece of evidence proffered by Mesquias as inadmissible—an affidavit by Mr. Belmares. (Belmares Aff. [#30], at 27.) Acadia challenges this affidavit as inadmissible summary judgment evidence, arguing Mr. Belmares was not properly disclosed as either a person with discoverable information or as an expert. Acadia argues that Mr. Belmares's affidavit relies on his specialized knowledge about the commercial real estate market—knowledge that he has due to his expertise as a real estate agent and that is beyond the scope of an ordinary lay witness. In the alternative, Acadia argues, even if Mr. Belmares were a lay witness, Mesquias did not properly disclose him as such. The Federal Rules of Civil Procedure require disclosure of both persons with discoverable information and expert witnesses. Fed. R. Civ. P. 26(a). Failure to disclose a witness, expert or lay, as required by Rule 26(a) results in the exclusion of that witness's testimony "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Mr. Belmares was personally involved with the real estate transaction at issue, and therefore is undoubtedly a fact witness in this case. He also could have potentially been designated as an expert witness, as his affidavit relies on his specialized expertise in the commercial real estate market. Regardless of the capacity in which Mesquias intended to present his testimony, Mr. Belmares was not disclosed as a witness in violation of his obligations under Rule 26. Mesquias has offered no explanation that might justify this failure to satisfy his disclosure obligations. The Court will therefore sustain Acadia's objection and has not considered the affidavit of Mr. Belmares in issuing this report and recommendation.[1] Regardless, the undersigned's recommendation to deny Acadia's motion for summary judgment would remain the same, with or without considering the Belmares affidavit.

## V. Analysis

Mesquias alleges that Acadia breached its contract by failing to pay his claim for hail damage to the Property. (Am. Compl. [#5], at 3.) Mesquias also requests a declaratory judgment that the property damage is a covered loss under the Policy. (*Id.*) The Court should deny Acadia's motion for summary judgment on both claims.

**A.     Breach of Contract Claim**

Acadia contends that it is entitled to summary judgment on Mesquias's breach of contract and declaratory judgment claims because Mesquias is unable to established one of the requirement elements of the claim—pecuniary loss—due to the sale of the Property. Because a genuine dispute of material fact on this element exists, Acadia is not entitled to summary judgment.

---

[1] This evidentiary ruling excluding the Belmares affidavit is for purposes of the summary-judgment motion only; it does not preclude the District Court from revisiting whether Mr. Belmares should be permitted to testify at trial.

"The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) (internal quotations omitted). In insurance cases, the damages element requires a two-step inquiry: (1) whether the insured had an insurable interest, and (2) whether the insured suffered a pecuniary loss with respect to that interest. *See Leggio v. Millers Nat'l Ins. Co.*, 398 S.W.2d 607, 608 (Tex. App.—Tyler 1965, writ ref'd). Under Texas law, the sale of property can erase pecuniary loss if it makes the plaintiff whole. *See Paramount Fire Ins. Co. v. Aetna Casualty and Surety Co.* 353 S.W.2d 841, 844 (Tex. 1962) ("[I]f a vendor is entitled to specific performance under a contract of sale and thereby collects the full purchase price despite fire damage to improvements, he has suffered no legal loss.").

Acadia argues that the summary judgment record establishes that Mesquias mitigated any losses he suffered from the hail damage through the sale of the Property, as in *Paramount Fire*. Mesquias argues that the record establishes the contrary—that he was not made whole by the Property sale. Acadia hinges its entire summary judgment argument on two pieces of evidence—Mesquias's statement that he did not reduce the purchase price of the Property due to roof damage (Mesquias Statement [#28-9], at 7) and the notation in the appraisal that any reduction in price was "due to legal proceedings stemming from Medicaid issues." (Appraisal [#28-12], at 39.) Neither of these statements establishes as a matter of law that Mesquias collected the full value of the Property (without any discount for hail damage) so as to be made fully whole and offset all pecuniary loss related to the hailstorm. Additionally, the statement in the appraisal does not establish that Mesquias's legal issues were the *sole* reason for the lower

purchase price; it merely states that they were *a* reason.  Moreover, Mesquias testified in his deposition that the damage to the roof was a factor in determining the purchase price he ultimately accepted.  (Mesquias Dep. [#28-10], at 22, 27.)  Mesquias's statements regarding the purchase price of the Property should be interpreted and his credibility evaluated by a jury.

Finally, the cases cited by Acadia do not support the grant of summary judgment in its favor.  In *Paramount Fire*, the property was destroyed by fire after the parties had entered into a contract of sale.  *Paramount*, 353 S.W.2d at 842.  The sale nonetheless went through at the price established *prior* to the fire.  *Id.* at 843.  The Texas Supreme Court held that once the seller contracted to sell the property, the seller's insurable interest became the agreed upon purchase price; since the seller received the full purchase price, without any reduction for fire damage, the seller did not suffer a pecuniary loss on its insurable interest due to the fire.  *Id.* at 845.  Here, in contrast, the price was negotiated a full two years *after* the Property was damaged.  And again, in Mesquias's deposition he stated repeatedly that damage to the Property, including the roof, affected the final purchase price.  (Mesquias Dep. [#28-10], at 22, 27, 29.)

Likewise, in *Chambless v. Travelers Lloyds of Tex. Ins. Co.*, another case cited by Acadia, the parties entered into an option contract for the sale of undamaged property.  123 F. Supp. 2d at 1032.  The option contract included the purchase price for the property.  *Id.*  While the contract was pending, the property was damaged by fire.  *Id.* at 1030.  Because the parties negotiated the price *prior* to the fire, it was undisputed that the seller was left in the same position financially as he would have been if the damage had not occurred.  *Id.* at 1032.  Again, the distinction here is that Mesquias's sale of the Property and the negotiation of the purchase price occurred two years *after* the Property was damaged, and Mesquias asserted in his deposition the purchase price accounted for the existing hail damage to the Property.

In summary, Mesquias has raised a fact issue as to whether he suffered a pecuniary loss related to the hail damage on the Property. Whether the hail damage or Mesquias's unrelated legal proceedings or both account for the reduced purchase price is a question of fact for trial. Acadia is not entitled to summary judgment.

**B.      Declaratory Judgment Claim**

The Court should also deny Acadia's request for summary judgment on Mesquias's declaratory judgment claim. Acadia argues that the claim is duplicative of the breach of contract cause of action. This is an argument based on the pleadings, not the evidentiary record. Regardless, it should be rejected.

"When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act." *Tyler v. Bank of Am., N.A.*, 2013 WL 1821754, No. SA-12-CV-0099-DAE, *10 (W.D. Tex. April 29, 2013) (internal quotations omitted). The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Federal courts in this Circuit use this discretion to reject "declaratory judgment claims seeking the resolution of issues that are the mirror image of and will be resolved as part of other claims in the lawsuit." *Fannie Mae v. K.O. Realty, Inc.*, No. 3:13-CV-2781-L, 2014 WL 3900619, at *9 (N.D. Tex. Aug. 8, 2014); *see also Flanagan v. Chesapeake Exp., LLC*, No. 3:15-CV-0222, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015) (collecting cases).

Although there are many parallels between Mesquias's breach of contract claim and declaratory judgment claim, the claims are not fully duplicative. In his declaratory judgment claim, Mesquias seeks a declaration that the hail damage to the Property is a loss covered by the

10

insurance policy issued by Acadia. In contrast, the breach of contract claim asks whether denying payment of the claim based on the subsequent sale was a breach. If Mesquias were to succeed on his declaratory judgment claim it would not have the effect of determining the outcome of the breach of contract claim. As Acadia points out in its summary judgment motion, there are other factors that must be considered in determining the breach of contract claim that are not applicable to the declaratory judgment claim. If Mesquias recovered any loss attributable to the property damage through a related transaction, then there would be no breach of contract even if the loss was a covered loss under the policy. The Court should deny summary judgment on this claim.

## VI.  Conclusion and Recommendation

Having considered the record in this case and the governing law, the undersigned **recommends** Defendant Acadia's Motion for Summary Judgment [#27] be **DENIED**.

## VII.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections

to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 17th day of December, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE